UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

ALICE JOHNSON,

    Plaintiff,

v.

NCL (BAHAMAS) LTD, a Bermuda
Company, d/b/a NORWEGIAN
CRUISE LINE,

    Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, ALICE JOHNSON, hereby sues the Defendant and files this Complaint for Damages and says:

### THE PARTIES AND JURISDICTION

1. This is an action for damages that exceed $75,000 exclusive of interest, costs, and attorney's fees.

2. **THE PLAINTIFF.** The Plaintiff, ALICE JOHNSON, is sui juris and is a resident of Levittown, New York.

3. **THE DEFENDANT**. The Defendant, (hereinafter referred to as "NCL" or "Defendant" or "the cruise line"), is a citizen of the foreign nation of Bermuda, a British Overseas Protectorate, is incorporated outside of the state of Florida in Bermuda, but is authorized to do business and does conduct business in the State of Florida, and at all times material hereto was and

1

is doing business in Miami Dade County, Florida. At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4. **FEDERAL SUBJECT MATTER JURISDICTION**.  Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

> (a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and or
> (b) Had an office or agency in this state and/or county; and/or
> (c) Engaged in substantial activity within this state; and/or
> (d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7. **DATE OF THE INCIDENT**.  The incident occurred during the night of March 3 to the morning of March 4, 2019.  The Plaintiff sustained her injuries based upon information and belief shortly before midnight on March 3, 2019.

8. **LOCATION OF THE INCIDENT.** The incident occurred onboard the vessel Norwegian *Escape*, a ship in navigable water while the Plaintiff was a passenger onboard. Accordingly, the Plaintiff's claims are governed by the general maritime law. Specifically, the subject incident took place in Plaintiff Johnson's passenger cabin.

9. **STATUS OF PLAINTIFF AS OF DATE AND TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel.

10. **DESCRIPTION OF THE INCIDENT:** On the night of March 3-4, 2019, and based upon information and belief just before midnight on March 3, 2019, the Defendant NCL sailed the Norwegian *Escape*, a cruise ship which at all times material hereto NCL owned and/or operated, into foreseeably dangerous weather and/or sea conditions capable of tossing and tilting the ship. At all times material hereto, Defendant NCL owed Plaintiff and its cruise passengers a reasonably duty of care under the circumstances to operate its vessels, including Norwegian *Escape*, such that passengers would not be subjected to unreasonably dangerous weather and sea conditions which could cause passengers to be violently tossed and thrown about the ship while underway. A reasonable amount of pitching and swaying are to be expected at sea, however, NCL's reasonable due of care under the circumstances includes appropriately forecasting weather and sea conditions and navigating, diverting, and if necessary, delaying its vessels, including NCL *Escape*, so that passengers are not subjected to the unreasonable risk of injury. Additionally, where NCL knows or reasonably should know of forthcoming dangerous seas and/or weather conditions, NCL must provide reasonably specific and prompt warnings to its passengers so that passengers can take steps to avoid injury.

11. Defendant NCL is an experienced cruise operator. NCL owns, operates, and/or manages over 15 vessels including the Norwegian *Escape*. NCL staffs its vessels with officers and

3

crew, who it entrusts with forecasting, navigation, steering, control, and operation of its cruise vessels, including the *Escape.* Based upon information and belief, the Defendant NCL tracks weather and seas as well as plans routes and scheduling for its cruise ships from its headquarters located shoreside in Miami, FL. Both before, during, and after cruise voyages, NCL and its officers and crew have access to weather forecasting technology and reports from weather services. Based upon information and belief and at all times material hereto, NCL and its resources located shoreside in Miami, FL are available to all its officers and crew should any assistance regarding weather, sea conditions, and/or scheduling/diversion of voyages be needed.

12. NCL officers and crewmembers, including the officers and crewmembers of the Norwegian *Escape* during the March 2019 voyage featuring the Plaintiff, served as servants/employees of Defendant NCL and Defendant NCL was at all times material hereto the master and vicariously liable for all actions and inactions of its crewmembers and officers.

13. The Defendant, NCL, knew or should have known of the dangerous conditions faced by Plaintiff Johnson on the night of March 3, 2019 to the early morning of March 4, 2019 for at least a couple of reasons. That dangerous condition was unreasonably dangerous weather, wind, and/or sea conditions capable of throwing cruise passengers off balance and causing them to fall while aboard the Norwegian *Escape*. First, NCL knew or should have known of the forthcoming danger because of the weather forecasts as well as the weather reports which had immediately preceded Norwegian *Escape's* departure. The storm which Norwegian *Escape* encountered on the night of March 3-4, 2019 had just dumped 10.6 inches of snow on Boston, MA. This storm, which NCL knowingly sailed into, was significant enough that it garnered the name "Winter Storm Scott." Farther south down the eastern seaboard, the larger, interconnected weather system also spawned a significant outbreak of tornados on March 3, 2019. Reports indicated that the weather system spawned up to 40 tornadoes. One tornado in Alabama created

4

winds in excess of 166 mph and caused the deaths of 23 people. The weather system spawned this tornado in Alabama at approximately 2 pm on March 3, 2019. Thus, the threat of unsafe weather was or should have been known to NCL before it sailed into trouble on the night of March 3 into March 4, 2019. This is especially so because these larger, interconnected weather systems invariably move off of the east coast of the United States into the Atlantic Ocean on a west to east pathway. This took the subject weather system directly into the path which the Norwegian *Escape* would be sailing on March 3 to March 4, 2019. Furthermore, hours before the incident involving Plaintiff Johnson, at 9 pm EST, Weather.com reported that "Winter Storm Scott quickly crossed through the Southeast into Sunday evening, bringing moisture northward and strong winds southward. Scott's cold front, which proceeded a record-breaking batch of early-March arctic air, was a focus for severe wind gusts and the squall line." Given the incredible strength of this weather system exiting the eastern seaboard as well as the forecasts and weather reports of extreme winds and weather, NCL knew or should have known of the extreme winds and weather conditions which Norwegian *Escape* was sailing into. NCL either saw and ignored the weather forecasts and/or chose not to review weather forecasts but should have done so and thus should have known of the dangerous conditions which Norwegian *Escape* would be sailing into on the night of March 3, 2019. Any claim by NCL that Norwegian *Escape* encountered a "freak" wind which caused the ship to tilt/list is debunked by the actual weather data which was at NCL's disposal before Norwegian *Escape* sailed into the worst of the weather on the night of March 3 to March 4, 2019, especially the forecasts for strong winds. Contrary to NCL's claims, this storm which Norwegian *Escape* chose to sail into brought record breaking cold and severe winds, an outbreak of tornadoes, and massive snowfall all along the eastern seaboard. Accordingly, that Norwegian *Escape* experienced winds in excess of 100 mph on the night of March 3-4, 2019 causing the ship to list to 45 degrees and passengers to suffer injury, like Plaintiff, was very much a foreseeable event to

5

Defendant NCL based upon the weather reports above. The subject weather system which caused the hazardous conditions aboard the *Escape* was something NCL very much knew or at least should have known about.

14. Additionally, Defendant NCL knew (or should have known) of the danger and consequences of sailing into severe storm conditions because of similar cases in the past which occurred before Plaintiff's incident. One prior incident similar to that experienced by the Plaintiff on Norwegian *Escape* occurred to the passengers of Norwegian *Breakaway* on or about January 3, 2018. This incident also resulted in a lawsuit against Defendant NCL. See *Wilson v. NCL Bahamas LTD.*, Case No. 18-25203. The facts of the *Breakaway* listing incident from January 2018 are strikingly similar to the facts which led to the listing of Norwegian *Escape* in March 2019. First, the weather forecasting leading up to the *Breakaway* listing incident included predictions of a historic storm which was producing hurricane force winds. Similar to the *Escape* listing incident here, the severity of the storm encountered by Norwegian *Breakaway* on January 3, 2018 caused an approximately 45-degree list of the vessel causing injuries to its passengers. Additionally, the weather system which NCL chose to sail Norwegian *Breakaway* into was a similar type of winter weather system which makes its way in a west to east direction and enters the Atlantic Ocean off of the east coast of the United States. At the time of its peril, the Norwegian *Breakaway* was attempting to sail a similar route to which the *Escape* sailed in March 2019, which takes the cruise ships up and down the Atlantic seaboard just off the East Coast of the United States. Moreover, like the *Escape*, the *Breakaway* experienced hurricane force winds. According to the plaintiffs in the *Breakaway* case, these hurricane force winds played a part in passengers being unable to stand in their staterooms and suffering injury. The winds and weather which resulted and/or contributed to the listing of the Norwegian *Escape* in this case were similarly hurricane force. NCL, itself, cited the wind on the night of March 3, 2019 as hitting 115, which is hurricane force level.

Defendant NCL is thus on notice of the danger presented in this case because of this prior listing incident involving Norwegian *Breakaway*.

15. Ultimately, in this case, NCL breached its reasonably duty of care to Plaintiff when operating Norwegian *Escape* into unreasonably dangerous weather and sea conditions in March 2019 and that negligence caused the injuries and damages suffered by the Plaintiff as described herein. Not long before midnight on March 3, 2019, Defendant NCL's decision to navigate the Norwegian *Escape* into a dangerous weather system along the Atlantic seaboard caused the subject ship to list at least approximately 45 degrees to one side as the vessel was impacted by weather and sea conditions, including but not necessarily limited to severe winds.  NCL failed to heed forecasts, its past cruise experience, and knowingly navigated its vessel into these dangerous and severe wind and weather conditions which exposed passengers to the likely threat of a severe listing or tilt condition of the vessel.  NCL also failed to use and/or appropriately engage its ship stabilizers to a degree necessary to avoid a severe listing of the vessel. When the severe weather, seas, and winds struck the vessel just before midnight on March 3, 2019, the *Escape* listed approximately 45-degrees which caused chairs, tables, and all manner of debris as well as passengers to be tossed about the ship.  Plaintiff Johnson and her husband were in their assigned passenger cabin aboard Norwegian *Escape* shortly before midnight on March 3, 2019 preparing for bed.  Due to NCL's careless choices to sail into this storm and not divert or delay the voyage as well as the failure to give passengers adequate or advanced warnings about the foreseeable conditions, NCL caused Plaintiff Johnson to be violently tossed from a chair which she was sitting on and to be thrown across the floor of her cabin and into a closet door. The result of being tossed in this manner caused Plaintiff Johnson to suffer a blow to her head and she sustained severe lacerations and head trauma, including but not necessarily limited to post-concussion and traumatic

brain injury.  Plaintiff Johnson continues to bear the physical scar from her impact and experiences headaches. She is presently following up with a neurologist.

### COUNT I--NEGLIGENCE:  FAILURE TO SAFELY NAVIGATE, FAILURE TO DIVERT, AND/OR FAILURE DELAY THE VESSEL

16. The Plaintiff, ALICE JOHNSON, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 15, above.

17. This is a count for negligence based upon NCL's failure to safely navigate as well as NCL's failure to divert and/or delay its vessel, the Norwegian *Escape*.  NCL has a reasonable duty of care under the circumstances to safely navigate/operate its vessels, including the *Escape*, so that unreasonably dangerous conditions are avoided. This duty of reasonable care under the circumstances includes the related duties to divert or delay its cruise vessels to avoid foreseeably dangerous conditions at sea for its passengers.  The circumstances in this case are that NCL is an experienced cruise operator.  NCL acts through its shipboard officers and crew and expects those officers and crew to act prudently when navigating the vessels when poor weather is imminent, including when navigating the Norwegian *Escape*.  At the same time, NCL makes itself available for consultation at all times from its headquarters in Miami, FL and NCL tracks all of its vessels and the weather conditions which such vessels are expected to encounter.   NCL shoreside and NCL's vessels at sea must work together and stay in regular communication to decide whether conditions will be reasonably safe for its vessels to sail.  On or about March 3, 2019, NCL and Norwegian *Escape* were in communication and both checking weather and sea forecasts so as to determine if departure of the subject voyage at issue in this case was safe and prudent. At all times material hereto, NCL owed Plaintiff and all the other passengers of Norwegian *Escape* a reasonable duty to heed the weather forecasts, heed NCL's previous cruise experience, and make reasonably prudent decisions based upon the facts and foreseeably dangerous conditions which

Norwegian *Escape* was likely to experience on the night of March 3-4, 2019. That reasonable duty of care under the circumstances on March 3-4, 2019 meant that NCL should have put prudence and safety of passengers ahead of staying on schedule and threat of incurring financial costs from delaying/diverting this voyage.

18. The Defendant NCL knew or should have known of the dangerous conditions faced by Plaintiff and the other NCL passengers of Norwegian *Escape* on March 3-4, 2019 for at least a couple of reasons. First, NCL knew or should have known of the forthcoming danger because of the weather forecasts as well as the weather reports which had immediately preceded Norwegian Escapes departure. The storm which Norwegian Escape encountered on the night of March 3-4, 2019 had just dumped 10.6 inches of snow on Boston, MA. This storm, which NCL knowingly sailed into, was significant enough that it garnered the name "Winter Storm Scott." Farther south down the eastern seaboard, the larger, interconnected weather system also spawned a significant outbreak of tornados on March 3, 2019. Reports indicated that the weather system spawned up to 40 tornadoes. One tornado in Alabama created winds in excess of 166 mph and caused the deaths of 23 people. The weather system spawned this tornado in Alabama at approximately 2 pm on March 3, 2019. Thus, the threat of unsafe weather was or should have been known to NCL before it sailed into trouble on the night of March 3 into March 4, 2019. This is especially so because these larger, interconnected weather systems invariably move off of the east coast of the United States into the Atlantic Ocean on a west to east pathway. This took the subject weather system directly into the path which the Norwegian Escape would be sailing on March 3 to March 4, 2019. Furthermore, hours before the incident involving Plaintiff Johnson, at 9 pm EST, Weather.com reported that "Winter Storm Scott quickly crossed through the Southeast into Sunday evening, bringing moisture northward and strong winds southward. Scott's cold front, which proceeded a record-breaking batch of early-March arctic air, was a focus for severe wind gusts and the squall

line." Given the incredible strength of this weather system exiting the eastern seaboard as well as the forecasts and weather reports of extreme winds and weather, NCL knew or should have known of the extreme winds and weather conditions which Norwegian *Escape* was sailing into. NCL either saw and ignored the weather forecasts and/or chose not to review weather forecasts but should have done so and thus should have known of the dangerous conditions which Norwegian *Escape* would be sailing into on the night of March 3, 2019. Any claim by NCL that Norwegian *Escape* encountered a "freak" wind which caused the ship to tilt/list is debunked by the actual weather data which was at NCL's disposal before Norwegian *Escape* sailed into the worst of the weather on the night of March 3 to March 4, 2019, especially the forecasts for strong winds. Contrary to NCL's claims, this storm which Norwegian *Escape* chose to sail into brought record breaking cold and severe winds, an outbreak of tornadoes, and massive snowfall all along the eastern seaboard. Accordingly, that Norwegian Escape experienced winds in excess of 100 mph on the night of March 3-4, 2019 causing the ship to list to 45 degrees and passengers to suffer injury, like Plaintiff, was very much a foreseeable event to Defendant NCL based upon the weather reports above. The subject weather system which caused the hazardous conditions aboard the *Escape* was something NCL very much knew or at least should have known about.

19. Additionally, Defendant NCL knew (or should have known) of the danger and consequences of sailing into severe storm conditions because of similar cases in the past which occurred before Plaintiff's incident. One prior incident similar to that experienced by the Plaintiff on Norwegian *Escape* occurred to the passengers of Norwegian *Breakaway* on or about January 3, 2018. This incident also resulted in a lawsuit against Defendant NCL. See *Wilson v. NCL Bahamas LTD.*, Case No. 18-25203. The facts of the *Breakaway* listing incident from January 2018 are strikingly similar to the facts which led to the listing of Norwegian *Escape* in March 2019. First, the weather forecasting leading up to the *Breakaway* listing incident included predictions of a

10

historic storm which was producing hurricane force winds. Similar to the *Escape* listing incident here, the severity of the storm encountered by Norwegian *Breakaway* on January 3, 2018 caused an approximately 45-degree list of the vessel causing injuries to its passengers.   Additionally, the weather system which NCL chose to sail Norwegian *Breakaway* into was a similar type of winter weather system which makes its way in a west to east direction and enters the Atlantic Ocean off of the east coast of the United States.  At the time of its peril, the Norwegian *Breakaway* was attempting to sail a similar route to which the *Escape* sailed in March 2019, which takes the cruise ships up and down the Atlantic seaboard just off the East Coast of the United States.   Moreover, like the *Escape*, the *Breakaway* experienced hurricane force winds.  According to the plaintiffs in the *Breakaway* case, these hurricane force winds played a part in passengers being unable to stand in their staterooms and suffering injury. The winds and weather which contributed to and/or resulted in the listing of the Norwegian *Escape* in this case were similarly hurricane force.  NCL, itself, cited the wind on the night of March 3, 2019 as hitting 115, which is hurricane force level. Defendant NCL is thus on notice of the danger presented in this case because of this prior listing incident involving Norwegian *Breakaway*.

20. The Defendant either (a) created the dangerous condition(s), through its agents or employees; (b) had actual knowledge of the dangerous condition(s); and/or (c) had constructive knowledge of the dangerous condition(s).

21. The Defendant had constructive knowledge of the dangerous condition(s) by, inter alia, (a) the length of time the dangerous condition(s) existed; (b) the nature of the dangerous condition(s), including that the condition(s) existed preceding and up to the ship's listing event and/or (c) the fact that the dangerous condition(s), a similar dangerous condition, or the cause of the dangerous condition(s) was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus,

the dangerous conditions were foreseeable and in the exercise of reasonable care the Defendant should have known about them.

22. In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent operation and navigation of its vessel. Therefore, no notice to the Defendant is required.

23. NCL breached its duty of care by failing to heed forecasts on weather and sea conditions; by failing to delay departure of the subject ship given the forecasts and to wait until conditions cleared and were safe for undertaking the subject voyage; by failing to divert the subject ship along a different route to avoid dangerous conditions; by failing to turn the ship back when conditions became too rough/dangerous; by failing to adequately and reasonably deploy and/or use ship stabilizers to avoid the ship tilting once in the midst of the dangerous storm conditions; by failing to go around to rooms and help passengers secure their belongings and other items like chairs which became dangerous projectiles and/or unstable in the storm and sea conditions; by failing to consult NCL shoreside so as to determine if it was safe to sail given conditions; by choosing to sail into dangerous storm conditions despite what NCL knew or should have known about the consequences of sailing in the high seas and winds which were forecasted; by failing to take action and/or by careless inaction as yet to be discovered; by failing to provide instructions to passengers regarding how to remain safe aboard the ship in the subject weather and/or sea conditions; and by failing to otherwise safely navigate and operate the vessel on the night of March 3, 2019.

24. These breaches of NCL's duty of care under the circumstances proximately caused this incident and the injuries suffered by the Plaintiff.  Not long before midnight on March 3, 2019, Defendant NCL's decision to navigate the Norwegian *Escape* into a dangerous weather system along the Atlantic seaboard caused the subject ship to list at least approximately 45 degrees to one

side as the vessel was impacted by severe winds, some topping over 100 mph.  NCL failed to heed forecasts, its past cruise experience, and knowingly navigated its vessel into these dangerous and severe wind and weather conditions which exposed passengers to the likely threat of a severe listing or tilt condition of the vessel.   When the severe winds/sea conditions struck the vessel, the approximately 45-degree listing of the vessel caused chairs, tables, and all manner of debris as well as passengers to be tossed about the ship.  Plaintiff Johnson and her husband were in their assigned passenger cabin aboard Norwegian *Escape* shortly before midnight on March 3, 2019 preparing for bed.  Due to NCL's careless choices to sail into this storm and not divert or delay the voyage as well as the failure to give passengers adequate or advanced warnings about the foreseeable conditions, NCL caused Plaintiff Johnson to be violently tossed from a chair which she was sitting on and to be thrown across the floor of her cabin and into a closet door. The result of being tossed in this manner caused Plaintiff Johnson to suffer a blow to her head and she sustained severe lacerations and head trauma, including but not necessarily limited to post-concussion and traumatic brain injury.   Plaintiff Johnson continues to bear the physical scar from her impact and experiences headaches.  Had NCL made the prudent and careful choice to either divert and/or delay this vessel, Plaintiff Johnson's fall and injuries would have been avoided.  But for NCL's failures and/or inadequate operation of ship stabilizers while the vessel was in the midst of the storm, Plaintiff Johnson's fall and injuries would have likely been avoided.    But for the other breaches enumerate herein or yet to be discovered, Plaintiff's incident would have been avoided.

25. The Defendant's negligence proximately caused the aforementioned injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past

13

and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT II--NEGLIGENCE: FAILURE TO REASONABLY AND PROPERLY WARN

26. The Plaintiff, ALICE JOHNSON, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 15, above.

27. This is a count for negligent failure to warn. NCL has a reasonable duty of care under the circumstances to safely navigate its vessels so passengers are not subject to unreasonably dangerous conditions at sea as well as a reasonable duty to warn of the risk of injury associated with dangerous weather and sea conditions, which can result in a vessel listing or tilting to one side. This duty to warn includes the aforementioned circumstances under which NCL elected to sail the Norwegian *Escape* on March 3-4, 2019. NCL elected to put its passengers in harm's way by sailing into foreseeably hazardous weather and sea conditions capable of causing passengers to be thrown to the ground and/or

forced off-balance and injured. Thus, NCL owed passengers a reasonably duty of care to warn of such dangers under the relevant circumstances.

28. The Defendant, NCL, knew or should have known of the dangerous conditions faced by Plaintiff Johnson on the night of March 3, 2019 to the early morning of March 4, 2019 for at least a couple of reasons. First, NCL knew or should have known of the forthcoming danger because of the weather forecasts as well as the weather reports which had immediately preceded Norwegian *Escape's* departure. The storm which Norwegian *Escape* encountered on the night of March 3-4, 2019 had just dumped 10.6 inches of snow on Boston, MA. This storm, which NCL knowingly sailed into, was significant enough that it garnered the name "Winter Storm Scott." Farther south down the eastern seaboard, the larger, interconnected weather system also spawned a significant outbreak of tornados on March 3, 2019. Reports indicated that the weather system spawned up to 40 tornadoes. One tornado in Alabama created winds in excess of 166 mph and caused the deaths of 23 people. The weather system spawned this tornado in Alabama at approximately 2 pm on March 3, 2019. Thus, the threat of unsafe weather was or should have been known to NCL before it sailed into trouble on the night of March 3 into March 4, 2019. This is especially so because these larger, interconnected weather systems invariably move off of the east coast of the United States into the Atlantic Ocean on a west to east pathway. This took the subject weather system directly into the path which the Norwegian Escape would be sailing on March 3 to March 4, 2019. Furthermore, hours before the incident involving Plaintiff Johnson, at 9 pm EST, Weather.com reported that "Winter Storm Scott quickly crossed through the Southeast into Sunday evening, bringing moisture northward and strong winds southward. Scott's cold front, which proceeded a record-breaking batch of early-March arctic air, was a focus for severe wind gusts and the squall line." Given the incredible strength of this weather system exiting the eastern seaboard as well as the forecasts and weather reports of extreme winds and weather, NCL knew or should have known of the extreme winds and weather conditions which

Norwegian *Escape* was sailing into. NCL either saw and ignored the weather forecasts and/or chose not to review weather forecasts but should have done so and thus should have known of the dangerous conditions which Norwegian Escape would be sailing into on the night of March 3, 2019. Any claim by NCL that Norwegian *Escape* encountered a "freak" wind which caused the ship to tilt/list is debunked by the actual weather data which was at NCL's disposal before Norwegian *Escape* sailed into the worst of the weather on the night of March 3 to March 4, 2019, especially the forecasts for strong winds. Contrary to NCL's claims, this storm which Norwegian *Escape* chose to sail into brought record breaking cold and severe winds, an outbreak of tornadoes, and massive snowfall all along the eastern seaboard. Accordingly, that Norwegian *Escape* experienced winds in excess of 100 mph on the night of March 3-4, 2019 causing the ship to list to 45 degrees and passengers to suffer injury, like Plaintiff, was very much a foreseeable event to Defendant NCL based upon the weather reports above. The subject weather system which caused the hazardous conditions aboard the *Escape* was something NCL very much knew or at least should have known about.

29. Additionally, Defendant NCL knew (or should have known) of the danger and consequences of sailing into severe storm conditions because of similar cases in the past which occurred before Plaintiff's incident. One prior incident similar to that experienced by the Plaintiff on Norwegian *Escape* occurred to the passengers of Norwegian *Breakaway* on or about January 3, 2018. This incident also resulted in a lawsuit against Defendant NCL. See *Wilson v. NCL Bahamas LTD.*, Case No. 18-25203. The facts of the *Breakaway* listing incident from January 2018 are strikingly similar to the facts which led to the listing of Norwegian *Escape* in March 2019. First, the weather forecasting leading up to the Breakaway listing incident included predictions of a historic storm which was producing hurricane force winds. Similar to the Escape listing incident here, the severity of the storm encountered by Norwegian *Breakaway* on January 3, 2018 caused an approximately 45-degree list of the vessel causing injuries to its passengers. Additionally, the weather system which NCL

16

chose to sail Norwegian *Breakaway* into was a similar type of winter weather system which makes its way in a west to east direction and enters the Atlantic Ocean off of the east coast of the United States. At the time of its peril, the Norwegian *Breakaway* was attempting to sail a similar route to which the *Escape* sailed in March 2019, which takes the cruise ships up and down the Atlantic seaboard just off the East Coast of the United States. Moreover, like the *Escape*, the *Breakaway* experienced hurricane force winds. According to the plaintiffs in the *Breakaway* case, these hurricane force winds played a part in passengers being unable to stand in their staterooms and suffering injury. The winds and weather which contributed to and/or resulted in the listing of the Norwegian *Escape* in this case were similarly hurricane force. NCL, itself, cited the wind on the night of March 3, 2019 as hitting 115, which is hurricane force level. Defendant NCL is thus on notice of the danger presented in this case because of this prior listing incident involving Norwegian *Breakaway*.

30. The Defendant either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

31. The Defendant had constructive knowledge of the dangerous condition(s) by, inter alia, (a) the length of time the dangerous condition(s) existed; (b) the nature of the dangerous condition(s), including that the condition(s) existed preceding and up to the ship's listing event and/or (c) the fact that the dangerous condition(s), a similar dangerous condition, or the cause of the dangerous condition(s) was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous conditions were foreseeable and in the exercise of reasonable care the Defendant should have known about them.

32. In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent operation and navigation of its vessel. Therefore, no notice to the Defendant is required.

33. NCL breached its duty of care by failing to properly, adequately, and/or reasonably warn the Plaintiff of the impending weather and wind capable of tilting the subject vessel to a degree that Plaintiff could neither sit nor stand in place; by failing to warn passengers of NCL's decision to sail into unreasonably dangerous weather conditions and that passengers should be alert at all times for sudden vessel movement which could knock passengers off balance; by failing to warn passengers to gather at appointed areas like muster stations or in their cabins far enough in advance so that passengers could safely weather the dangerous conditions; by failing to reasonably warn passengers to take a base of action against sudden and extreme ship movement caused by the (foreseeable to NCL) weather conditions, by failing to warn passengers like Plaintiff to avoid chairs and other objects which were not bolted down; by failing to provide adequate, reasonable warnings through video and/or printed media specific enough to communicate exactly when, where, and why passengers, like Plaintiff, should exercise caution; by failing to warn passengers in advance that NCL would not divert or delay its vessel even for severe and unreasonably dangerous weather conditions; and by otherwise failing to reasonably warn the Plaintiff of the dangers associated with the listing incident.

34. These breaches of NCL's duty of care under the circumstances proximately caused this incident and the injuries suffered by the Plaintiff.  Not long before midnight on March 3, 2019, Defendant NCL's decision to navigate the Norwegian *Escape* into a dangerous weather system along the Atlantic seaboard caused the subject ship to list at least approximately 45 degrees to one side as the vessel was impacted by severe winds, some topping over 100 mph.  NCL failed to heed forecasts, its past cruise experience, and knowingly navigated its vessel into these dangerous and severe wind and weather conditions which exposed passengers to the likely threat of a severe listing or tilt condition of the vessel.  When the severe winds/sea conditions struck the vessel, the approximately 45-degree listing of the vessel caused chairs, tables, and all manner of debris as well as passengers to be tossed about the ship.  Plaintiff Johnson and her husband were in their

assigned passenger cabin aboard Norwegian *Escape* shortly before midnight on March 3, 2019 preparing for bed.  Due to NCL's careless choices to sail into this storm and not divert or delay the voyage as well as the failure to give passengers adequate or advanced warnings about the foreseeable conditions, NCL caused Plaintiff Johnson to be violently tossed from a chair which she was sitting on and to be thrown across the floor of her cabin and into a closet door. The result of being tossed in this manner caused Plaintiff Johnson to suffer a blow to her head and she sustained severe lacerations and head trauma, including but not necessarily limited to post-concussion and traumatic brain injury.  Plaintiff Johnson continues to bear the physical scar from her impact and experiences headaches.  There was nothing Plaintiff Johnson could do to avoid her injuries given the lack of specific and concrete enough warnings from NCL about what to do under such dangerous conditions.  But for NCL's failures to warn noted above, Plaintiff could have and would have taken a base of action and protected herself until the dangerous weather and seas which resulted in the subject vessel's listing had passed.   But for NCL's failures to warn Plaintiff that NCL would risk sailing under such dangerous circumstances, Plaintiff would have chosen a different cruise or elected not to cruise with NCL on this voyage.

     35. The Defendant's negligence proximately caused the aforementioned injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

> By: *s/ Christopher B. Smith*
> John H. Hickey (FBN 305081)
> federalcourtfilings@hickeylawfirm.com
> Christopher B. Smith (FBN 0121925)
> csmith@hickeylawfirm.com
> **Hickey Law Firm, P.A.**
> 1401 Brickell Avenue, Ste. 510
> Miami, Florida 33131-3504
> Telephone: (305) 371-8000
> Facsimile: (305) 371-3542
> *Attorneys for the Plaintiff*